## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN CHAVEZ, on behalf of himself and all others similarly situated, | |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | Case No. 25-cv-5014 |
| THG NUTRITION US INC d/b/a US.MYPROTEIN.COM | |
| Defendant. | |

     Plaintiff Steven Chavez on behalf of himself and all others similarly situated, bring this class action suit for monetary and equitable relief against Defendant THG Nutrition US Inc d/b/a us.myprotein.com ("MyProtein" or "Defendant"). Plaintiff alleges the following based upon personal information as to allegations regarding himself, and the investigation of his counsel, and on information and belief as to all other allegations:

## TABLE OF CONTENTS

NATURE OF THE ACTION ................................................................................. 1

THE PARTIES ................................................................................................... 1

JURISDICTION AND VENUE............................................................................. 2

FACTUAL ALLEGATIONS ................................................................................. 3

    A.    False Discounting of Products ........................................................ 4

    B.    Defendant's Reference Prices are not the Prevailing Market
        Price ........................................................................................... 11

CLASS ACTION ALLEGATIONS ..................................................................... 12

FIRST CAUSE OF ACTION ............................................................................. 16

SECOND CAUSE OF ACTION ........................................................................ 21

THIRD CAUSE OF ACTION ............................................................................ 22

PRAYER FOR RELIEF ..................................................................................... 24

## NATURE OF THE ACTION

1.     This is a class action lawsuit against MyProtein, which sells protein powder, snacks, supplements, and vitamins, as well as various forms of activewear on its website, https://www.us.myprotein.com/. The website claims that they are "the world's no.1 online sports nutrition brand."[1]

2.     MyProtein consistently, and falsely, advertises massive purported discounts for its products. In truth, the "sales" are perpetual, i.e. the products are always sold at a purportedly discounted price, and never at the original reference prices displayed on the website.

3.     Through this false and deceptive advertising and pricing scheme, Defendant has violated California law, which expressly prohibits falsely advertising goods on "sale" from fictitious former prices.

4.     Plaintiff, on behalf of himself, as a private attorney general, and on behalf of all others similarly situated, hereby seeks restitution, injunctive relief, attorney's fees, and all other relief which the Court may deem appropriate.

## THE PARTIES

5.     Plaintiff Steven Chavez is an individual who resides in Rio Linda, California. In February 2024, he purchased a 0.5lb bag of MyProtein unflavored Creatine Monohydrate Powder and a 2.2lb bag of MyProtein "Chocolate Smooth" Impact Whey Protein powder. At the time of purchase, MyProtein falsely advertised their products as being on "sale" for 40 percent off the original reference prices of

---

[1] https://us.myprotein.com/ (last accessed June 12, 2025)

$19.99 and $44.99, respectively. Plaintiff reasonable relied on Defendant's false advertisements and would not have purchased the items or would have paid less for them had he known about the deceptive advertising.

6.     Defendant THG Nutrition US Inc d/b/a us.myprotein.com is a California corporation headquartered in New York City, New York and is responsible for the false advertising and misleading statements that Plaintiff reasonably relied on when he purchased his device.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than Defendant.

8.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in New York City, New York. Defendant conducts substantial business in this District, and a substantial part of the acts and omissions that Plaintiff complains of occurred in this District.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District and is subject to this Court's personal jurisdiction.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

11.    Defendant MyProtein sells protein powders, snacks, and supplements as well as vitamins, men and women's activewear, and accessories ("Powders," "Snacks", "Supplements," "Vitamins," "Activewear," "Accessories," and together, "Products") on its website www.us.myprotein.com.

12.    Defendant claims that protein "plays a huge role in the growth and maintenance of muscle mass."[2] As such, the Defendant implies that its protein products are desirable for this purpose because they are "born from the expertise of nutritionists" and "back by rigorous research and testing."[3]

13.    Defendant claims that "some brands cut corners and spike their protein with fillers like amino acids and nitrogen to inflate the amount of protein it says on the label."[4] However, the Defendant does not do this because "integrity matters."[5]

14.    MyProtein has engaged in persistent false discounting of its products sitewide for years, with "discounts" typically ranging from 30 percent to 50 percent off.

---

[2] https://us.myprotein.com/p/sports-nutrition/impact-whey-protein/10852500/ (last accessed June 12, 2025)

[3] https://us.myprotein.com/ (last accessed June 12, 2025)

[4] https://us.myprotein.com/p/sports-nutrition/impact-whey-protein/10852500/ (last accessed June 12, 2025)

[5] https://us.myprotein.com/p/sports-nutrition/impact-whey-protein/10852500/ (last accessed June 12, 2025)

15.    On every page of its website, Defendant advertises sitewide discounts and discount codes to customers, making it appear that the customer is receiving a deal on MyProtein products.

16.    However, Defendant runs these "deals" continuously, meaning that the products are always discounted and never sold at the alleged "full price." Thus, the reference prices listed on the website is not the market price because Defendant does not make bona fide sales at said prices; the vast majority of Defendant's sales are made at the perpetually discounted prices.

## A.    False Discounting of Products

17.    Defendant sells various protein products that allegedly support muscle growth after exercising. Defendant also sells men and women's activewear and accessories. Since at least February 2024, all products on this website are always presented as discounted, falsely advertising anywhere from 30 to 50 percent in savings.

18.    In the three months prior to Plaintiff's purchases on February 4, 2024, as well as the months since, Defendant has not sold its products without a discount. For example, a 2.2lb bag of "Chocolate Smooth" Impact Whey Protein is listed at $44.99. However, due to the website's perpetual sale, the Defendant almost never makes a bona fide sale at this listed price.

19.    The following screenshots taken from Archive.org and Defendant's current website illustrate the deceptive scheme.

20.      **October 15, 2023**: Defendant ran a 30 to 45 percent discount on all products:



21.      **November 4, 2023**: Defendant runs a "sale" for up to 50 percent off sitewide:



22.    **December 5, 2023**: Defendant offers 35 percent off sitewide:



23.    **January 31, 2024**: Defendant "discounts" entire website by 40 percent:



24.     **February 4, 2024**: Defendant "discounts" entire website by 35 percent:



25.     Since February 4, 2024—Plaintiff's purchase date—perpetual sales on Defendant's website have continued.

26.     **April 18, 2024**: Defendant advertised 50 percent off all products plus an additional 15 percent off using a given discount code:



27.    **June 7, 2024**: Defendant ran discounts of 30 percent off any purchase and 45 percent off $70 or more:



28.    As of June 12, 2025, Defendant's entire website is discounted between 30 percent and 45 percent:



29.    Due to these perpetual sales, the original prices listed on Defendant's website are not an accurate representation of the products' market value. For example, as of June 12, 2025, a 2.2lb bag of "Chocolate Milkshake" Impact Whey Protein is listed at $59.99.[6] But the product is constantly on sale, with consistent 30 to 50 percent discounts.

30.    As a result, Defendants' reference prices are not the prevailing market price. The non-discounted price cannot be considered the product's market value. Instead, the market value is closer to the discounted price that each product is almost always bought for.

31.    By listing products above their real market value and then making them appear discounted, Defendant engages in illegal false reference pricing.

32.    Defendant employs false reference pricing schemes to increase sales because it knows that they influence purchasing decisions, as consumers are drawn to perceived bargains. Fake discounting and false reference prices are widely recognized as powerful tools in convincing customers to make purchases, with higher reference prices leading to higher selling prices.[7]

33.    As one research study from the Harvard Business School summarized:

> Taken together, evidence from our analysis of observational transaction data and our laboratory

---

[6] https://us.myprotein.com/p/sports-nutrition/impact-whey-protein/10852500/?variation=10852529 (last accessed June 12, 2025)

[7] *See, e.g.*, Richard Staelin, Joel E. Urbany, and Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 1-21 Journal of Marketing (2023); Armstrong, Mark and Yongmin Chen (2019), "Discount Pricing," Economic Inquiry, 58 (4), 1614–27.

experiment suggests that fake prices provide sellers with a powerful tool to enhance demand, ***but one that may come at the expense of misleading consumers about products' true initial selling prices. Consumers take initial prices as signals of product quality and rate offers as being better deals the higher these initial prices are with respect to present selling prices. Accordingly, fake prices have the highest influence on purchase likelihood for less-informed consumers***.

. . .

***By definition, a fake price offers a fake discount***—a discount that does not represent a decrease from some previous selling price but, rather, the difference between the current selling price and a fake introductory price. There is much existing literature on the impact of discounts on consumer behavior.[8]

34.    Defendant's misconduct has therefore artificially increased demand for its Products and has manipulated consumers like Plaintiff and the class members to pay an unjustified price premium for Defendant's Products.

---

[8] Donald Ngwe, *Fake Discounts Drive Real Revenues in Retail,* Harvard Business School Working Paper (2018), available at https://www.hbs.edu/ris/Publication%20Files/18-113_16977967-84c0-488d-96e5-ffba637617d9.pdf (emphasis added).

*See also* 16 C.F.R.§ 233.1(a) ("One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. **If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects**. In such a case, the 'reduced' price is, in reality, probably just the seller's regular price.") (emphasis added).

**B.    Defendant's Reference Prices are not the Prevailing Market Price**

35.    On information and belief, Defendant makes most of its sales directly from http://www.us.myprotein.com, where it sells the Products at a false discount.

36.    And because Defendant is the primary seller of the Products, to the extent any third-party sales have occurred, the relatively lower volume of those sales do not establish prevailing market prices.

37.    Moreover, third-party sales do not establish that MyProtein's original reference prices on its website are bona fide market prices for its product. For instance, although it appears that Amazon has at least listed for sale the Products as available from third-party sellers, none of them are offered for purchase at the original reference prices that MyProtein posts on its website. A prime example of this is that Defendant's website lists a 2.2lb bag of "Chocolate Milkshake" Impact Whey Protein at $59.99 (shown above), but Amazon has listed the same product for $32.99:



38.    Thus, the original reference price listed on Defendant's website is not the bona fide market price as established by Defendant's website or third-party sellers.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action on behalf of himself and on behalf of the following class (the "Class"):

> All persons in the United States, within the applicable statute of limitations, who purchased Products from Defendant that were advertised with a discount.

40.     Upon information and belief, the false advertisements and misleading statements emanated from the State of California, where Defendant is incorporated.

41.     Because Defendant is a California corporation, the claims and issues asserted herein are governed by California state law. The State of California has the greatest interest in policing corporate conduct occurring within the State.

42.     Excluded from the proposed Class are Defendant and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class.

43.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence he would use to prove those elements in individual actions alleging the same claims.

44.     This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiff can demonstrate the elements delineated below.

45.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Class are each so numerous that their individual joinder would be impracticable.

While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed each Class includes many tens of thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiff at this time but can be ascertained from Defendant's records.

46. **Ascertainability.** The Class is ascertainable because its members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control. Plaintiff anticipates providing appropriate notice to the Class to be approved by the Court after class certification, or pursuant to court order.

47. **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) Whether Defendant engaged in the conduct alleged in this Complaint;

(b) Whether Defendant violated the applicable statutes alleged herein;

(c) Whether Plaintiff and the class members are injured and harmed directly by Defendant's conduct;

(d) Whether Plaintiff and the class members are entitled to monetary relief due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts;

(e) Whether Plaintiff and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint;

(f) Whether Plaintiff and the Class are entitled to injunctive, declaratory relief, or other equitable relief; and

(g) Whether Plaintiff and the Class are entitled to reasonable attorneys' fees and costs.

48.    **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of Plaintiff and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to Plaintiff and the putative class members. Plaintiff and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiff's interests coincide with, and are not antagonistic to, those of the other class members. Plaintiff has been damaged by the same wrongdoing set forth in this Complaint.

49.    **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class members, and he has retained counsel competent and experienced in complex class action, business competition, health care and consumer litigation. Plaintiff and his counsel will fairly and adequately protect the interest of the class members.

50. **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the tens or even hundreds of thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

51. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to

individual class members, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### Violation of California's Unfair Competition Law ("UCL") California Business & Professional Code § 17200 et seq.

52.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth here.

53.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

54.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

55.    A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

56.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

57.     Defendant has violated the "unlawful" prong under the UCL and has engaged in "unfair, deceptive, untrue or misleading" advertising.

58.     The Federal Trade Commission Act ("FTC ACT") prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. *See* 15 U.S.C. § 52(a). Defendant's use of fake discounts to sell its Products are deceptive practices that violate the FTC ACT and federal regulations.

59.     16 C.F.R. § 233.1 states:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good

faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

60.    California law also prohibits false former pricing schemes. Cal. Bus. & Prof. Code § 17501, entitled "Value determinations; Former price advertisements," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

61.    As further detailed in the Second Claim for Relief below, California's False Advertising Law also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9), and prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." *Id.* § (a)(13).

62.    Defendant has also violated the "unfair" prong of the UCL by falsely representing that its consumers received a discount from a referenced supposedly original former price of its Products.

63.    These acts and practices are unfair because they were likely to cause consumers to falsely believe that Defendant was offering extra value, discounts, or bargains from the prevailing market value or worth of the products sold.

64.    As a result, purchasers (including Plaintiff) reasonably understood that they were receiving valuable price reductions on their purchases. This, in turn, induced reasonable purchasers to buy Defendant's Products that they would not have otherwise purchased, or to pay more for the Products than they would have if they had known about the false advertising.

65.    The gravity of the harm to Plaintiff and members of the Class resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, or motives that Defendant may have had for engaging in such deceptive acts and practices.

66.    Defendant's acts and practices deceived Plaintiff and the Class at large. Specifically, Plaintiff and the Class relied on these misleading and deceptive representations regarding sales and discounts.

67.    Plaintiff and the Class never received the benefit of their bargains with Defendant because they did not receive any actual discount, contra Defendant's misrepresentations. Plaintiff and Class members did not receive Products that were worth the inflated amount that Defendant represented to them as the original reference prices; the Products did not regularly sell for, and were not actually worth, the fictitious reference prices advertised by Defendant.

68.     As a result of these violations under each of the unlawful, unfair, and fraudulent prongs of the UCL, Defendant has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct.

69.     Through its unfair acts and practices, Defendant has unlawfully taken money from Plaintiff and the class members. Plaintiff therefore requests that this Court order Defendant to restore this money to Plaintiff and all class members. Plaintiff further seeks an award of attorney's fees and costs under Cal. Code Civ. Proc. § 1021.5

70.     Plaintiff and the class members also lack an adequate remedy at law for future harm and seek to enjoin Defendant from continuing to violate the UCL, and/or from violating the UCL in the future. Otherwise, Plaintiff, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

71.     **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, also seeks public injunctive relief to protect the general public from Defendant's conduct.

72.     Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Plaintiff would purchase products from Defendant again if it stopped falsely advertising limited time sales and discounts for its Products, so he could determine the true value and true price of Defendant's

products. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## SECOND CAUSE OF ACTION

### Violation of California's False Advertising Law ("FAL")
### California Business & Professional Code § 17500 *et seq.*

73.     Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth here.

74.     The FAL prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value, and former price. Defendant's false advertising scheme misrepresenting its standard prices as limited time sales violates the FAL.

75.     Further, the FAL provides that: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

76.     Defendant has falsely advertised former prices that were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement

77.     Through its unfair acts and practices, Defendant has unlawfully obtained money from Plaintiff and the class members. As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiff and all class members.

Plaintiff further seeks an award of attorney's fees and costs under Cal. Code Civ. Proc. § 1021.5.

78.    Plaintiff and the class members also lack an adequate remedy at law for future harm and seek to enjoin Defendant from continuing to violate the FAL, and/or from violating the FAL in the future. Otherwise, Plaintiff, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

79.    **Permanent public injunctive relief**. Plaintiff, acting as a private attorney general, also seeks public injunctive relief to protect the general public from Defendant's conduct.

80.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Plaintiff would purchase products from Defendant again if it stopped falsely advertising limited time sales and discounts for its Products, so she could determine the true value and true price of Defendant's products. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

### THIRD CAUSE OF ACTION

### Violations of Consumers Legal Remedies Act (the "CLRA") California Civil Code § 1750, *et seq.*

81.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth here.

82.     Plaintiff and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

83.     Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

84.     Defendant and its Products are a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

85.     Defendant has violated § 1770(a)(5) by representing that the Products had characteristics they did not have.

86.     Defendant has violated § 1770(a)(7) by misrepresenting that the Products are of a particular standard, quality, or grade.

87.     Defendant has violated § 1770(a)(9) by advertising the Products with an intent not to sell them as advertised.

88.     In violation of § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

89.     Defendant has violated § 1770(a)(13)'s proscription against making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions.

90.     Plaintiff and the other class members suffered actual damages as a direct and proximate result of Defendant's violation of the CLRA for conduct alleged herein.

91.    Plaintiff and the class members demand judgment against Defendant for injunctive relief and attorney's fees.

92.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, also seeks public injunctive relief to protect the general public from Defendant's conduct.

93.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Plaintiff would purchase products from Defendant again if it stopped falsely advertising limited time sales and discounts for its Products, so she could determine the true value and true price of Defendant's products. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, as a private attorney general, and on behalf of the proposed Class, prays for relief and judgment against Defendant as follows:

   A.    certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representatives of the Class, and designating Plaintiff's counsel as Class Counsel;

   B.    awarding declaratory and equitable relief, including restitution and disgorgement;

   C.    enjoining Defendant from continuing to engage in the wrongful acts and practices alleged here;

D.      awarding Plaintiff and the class members the costs of prosecuting this

        action, including expert witness fees;

E.      awarding Plaintiff and the class members reasonable attorney's fees and

        costs as allowable by law;

F.      awarding pre-judgment and post-judgment interest; and

G.      granting any other relief as this Court may deem just and proper.


Dated: June 13, 2025

                            Respectfully submitted,

                            */s/ Raphael Janove*
                            Raphael Janove
                            **JANOVE PLLC**
                            500 7th Ave., 8th Floor
                            New York, NY 10018
                            Tel: (646) 347-3940
                            Email: raphael@janove.law